UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL WILLIAMS,

                   Petitioner,                   Case No. 2:17-cv-11426
                                                   Hon. Paul D. Borman
v.

ANTHONY STEWART,

                   Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Crystal Williams was convicted after a bench trial held in the Wayne Circuit Court of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84(1)(a), and felonious assault, MICH. COMP. LAWS § 750.82. The court sentenced Petitioner to 71 months to 10 years for the assault with intent to commit greatly bodily harm conviction, and 2 to 4 years for the felonious assault conviction. The petition raises two claims: (1) insufficient evidence was presented at trial to sustain Petitioner's convictions, and (2) Petitioner's trial counsel was ineffective for failing to investigate and present additional evidence to show that Petitioner acted in self-defense. The Court will deny the petition because the

claims are without merit. The Court will also deny Petitioner a certificate of appealability and deny her permission to proceed on appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See, *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010).

> While celebrating their anniversary, defendant and her boyfriend, Albert Merrill, became intoxicated and belligerent with each other. This was not unusual as defendant and Merrill had a history of domestic violence. On the night in question, defendant's grown son, stepson, and nephew were visiting. Defendant's son tried to remove Merrill from the home, but departed in frustration when defendant declared that she wanted Merrill to stay. The other young men left as well. Alone in the home, defendant and Merrill began to argue violently. Defendant beat Merrill on the head and face with a metal clothes iron, and bit and tried to strangle him. Merrill required stitches for his severe lacerations and had to wear a neck brace. Merrill shot defendant twice, once in the arm and once in the chest. The couple provided divergent accounts of the events leading to their injuries.

> Merrill claimed that he tried to telephone for a taxi and gather his belongings, but defendant prevented his exit. When Merrill, who was disabled from bone cancer, sat down in a chair, defendant allegedly knocked him to the ground and sat on his legs to prevent him from moving. Merrill testified that defendant bit his hand, tried to strangle him, and grabbed a nearby iron and beat him savagely on the head and face. During the assault, defendant threatened to kill Merrill and hide his body in the basement. Merrill noticed his jacket lying on the floor and reached out for the handgun that he kept in the garment's pocket. Merrill asserted that he first shot defendant in the arm. Defendant continued her attack and Merrill shot a second time, hitting defendant in the chest. Defendant then climbed off of Merrill and called 911. Merrill escaped to

2

the bathroom and hid the gun in the toilet tank, ostensibly to prevent defendant from gaining access to the weapon.

Defendant accused Merrill of starting the fight. She contended that she felt threatened by Merrill and attempted to call 911. Merrill hit her with an object to prevent her call. Defendant contended that she pushed Merrill into a chair in response to this attack. Merrill fell out of the chair and grabbed defendant's nightgown, pulling her down on top of him, she claimed. Defendant testified that Merrill continued to hit her and she grabbed the iron and struck Merrill in self-defense. She bit Merrill when he tried to punch her in the face and again when he tried to grab the iron. Defendant further indicated that Merrill first shot her in the chest as she tried to rise from the floor and did not shoot her in the arm until she headed downstairs to open the door for the police.

An officer who responded to the scene testified that he heard yelling as he approached the house. Defendant advised the officer when he entered that Merrill was upstairs and still armed. The officer ordered Merrill to descend with his hands raised. Merrill delayed and the officer heard him maneuvering the lid to the toilet tank. When Merrill came to the top of the stairs, the officer saw that the skin on his scalp was peeled back and he was covered in blood.

*People v. Williams*, No. 322606, 2015 WL 5920244, at *1-2 (Mich. Ct. App. Oct. 8, 2015).

Following her conviction and sentence, Petitioner filed a claim of appeal. Petitioner was appointed appellate counsel who filed a brief on appeal in the Michigan Court of Appeals, raising two claims:

I. Insufficient evidence was presented at trial for the trial court to convict Williams.

II. Williams's sixth amendment right to counsel was violated due to ineffective assistance of counsel.

3

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but her appeal was denied by standard order. *People v. Williams*, 499 Mich. 916 (2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to

4

the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to sustain her convictions. Specifically, Petitioner asserts that the prosecutor failed to prove beyond a reasonable doubt that she did not act in self-defense. She also claims that the prosecutor did not present sufficient evidence to establish the

5

elements of her two offenses.

     First, to the extent Petitioner claims that the prosecutor failed to disprove her self-defense claim or that the wrong elements of self-defense were employed by the trial court, the claim is not cognizable in this action. Under Michigan law, the prosecution bears the burden of proving the absence of self-defense beyond a reasonable doubt when the defense is raised by a defendant. *Paprocki v. Foltz*, 869 F.2d 281, 282 (6th Cir. 1989) (citing *Berrier v. Egeler*, 583 F.2d 515, 521 (6th Cir. 1978)). Nevertheless, self-defense is an affirmative defense under state law. *See Christian v. Romanowski*, No. 17-1279, 2017 WL 4083632, at *3 (6th Cir. Aug. 25, 2017). "'[P]roof of the nonexistence of all affirmative defenses has never been constitutionally required[.]'" *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999), *abrogated on other grounds* by *Wogenstahl v. Mitchell*, 668 F.3d 307 (6th Cir. 2012); see also *Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) (citing *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987)) ("In those States in which self-defense is an

affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"). Accordingly, Petitioner did not have a federal constitutional right to have the prosecutor present sufficient evidence negating self-defense, and this portion of her claim does not present a cognizable issue in this action.

With respect to the claim that insufficient evidence was presented as to the elements of the offenses, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Nevertheless, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id*. at 318-19 (emphasis in original) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (2010)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19 (emphasis in original) (citation omitted).

7

"[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Instead, the federal court may grant habeas relief "only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Therefore, for a federal habeas court reviewing a state court's sufficiency of the evidence evaluation, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

The Michigan Court of Appeals rejected this part of Petitioner's sufficiency of the evidence claim on the merits, finding:

> Moreover, the evidence sufficiently supported the elements of the two offenses for which defendant was convicted. The elements of assault with intent to do great bodily harm less than murder are: "'(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'" *People v. Stevens*, 306 Mich. App. 620, 628 (2014), quoting *People v. Parcha*, 227 Mich. App. 236, 239 (1997). The "intent to do great bodily harm less than murder" necessary to satisfy the second element has been defined as " 'an intent to do serious injury of an aggravated nature.'" *Id*., quoting *People v. Brown*, 267 Mich. App. 141, 147 (2005). The fact

8

finder may infer the necessary intent "from the defendant's actions, including the use of a dangerous weapon or the making of threats," as well as the nature of the victim's injuries. *Id.* at 629. In relation to felonious assault, the prosecutor must prove: "'(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.'" *People v. Nix*, 301 Mich. App. 195, 205 (2013), quoting *People v. Avant*, 235 Mich. App. 499, 505 (1999). An object not designed to be a weapon may be considered a dangerous weapon when used as such. *People v. Barkley*, 151 Mich. App. 234, 238 (1986).

\* \* \*

Defendant conceded the facts necessary to establish the underlying assault element of both charges. She readily admitted that she bit Merrill and beat him on the head and face with an iron. Defendant's testimony also established that her use of the iron turned this otherwise benign appliance into a weapon.

And the prosecution presented sufficient evidence from which the court could infer defendant's intent in contradiction of her self-defense claim. Merrill testified that defendant was the initial aggressor. He described how defendant incapacitated him and beat him on the head and face with an iron. During the assault, defendant threatened to kill Merrill and hide his body. Even after Merrill armed himself, he alleged that defendant continued to attack him. The nature of Merrill's injuries supported that defendant intended to commit great bodily harm. The beating pulled the skin from Merrill's scalp and he required numerous stitches to close his multiple lacerations. The force of the blows left blood splatter on the walls. Further, as noted by the court, defendant had the opportunity to walk away. The court found it unlikely that the sick and frail Merrill could pull the much larger defendant onto the floor by tugging her nightgown. Therefore, defendant could have left the room and called 911 rather than engaging in this attack. We have no grounds to interfere with that conclusion.

*Williams*, 2015 WL 5920244, at \*3-4.

This decision did not constitute an unreasonable application of the established Supreme Court standard. The evidence viewed most favorably to the prosecution allowed the jury to find beyond a reasonable doubt that Petitioner committed the offenses. After giving background testimony regarding his relationship with Petitioner, the victim testified to his version of events. The victim testified that during the argument he attempted to call a cab to leave Petitioner's home, but Petitioner pulled him out of his chair, sat on his legs, and started to severely beat him around his head and face with a metal clothes iron. Dkt. 8-3, at 24-27. According to the victim, Petitioner also tried to choke him and dig his eyes out. Id. at 34. Petitioner told the victim that she was going to kill him and put his body in the basement. *Id*. at 27. After the victim managed to retrieve his handgun and shoot Petitioner, Petitioner got off of him, and called 9-1-1. *Id*. at 32-33. The victim sustained multiple stitches to his head and face, and he lost a tooth. *Id*. at 33-36, 41. Ten photographs depicting the victim's injuries were admitted into evidence. *Id*. at 37. Petitioner testified that it was the victim who attacked and then shot her, and that her actions and the injuries sustained by the victim were the result of her efforts at self-defense. *Id*. at 102-114.

The trial therefore presented a case of word-against-word, requiring the court sitting as the finder of fact to make a credibility determination. The trial court

chose to believe the victim's testimony beyond a reasonable doubt. That decision cannot be second-guessed when reviewing the constitutional sufficiency of the evidence. It is the responsibility of the fact-finder and not a court reviewing a sufficiency of the evidence claim to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor was observed by the trial court. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

In light of the testimony provided by the victim, which clearly satisfied the elements of both assault with intent to commit great bodily harm and felonious assault, the decision of the Michigan Court of Appeals rejecting Petitioner's claim "was [not] so insupportable as to fall below the threshold of bare rationality." *See Coleman*, 566 U.S. at 656. Petitioner's first claim is without merit.

B. Ineffective Assistance of Counsel

Petitioner's second claim asserts that her defense counsel was ineffective in the manner he presented her self-defense claim. She presents a laundry-list of actions counsel failed to perform to effectively present her defense: 1) counsel failed to present medical records to show Petitioner's serious mental illnesses and

to show that the victim had broken her nose, 2) counsel failed to present medical records to show the severity of her gunshot wounds and to show that she took anxiety medications before making her statement to police, 3) counsel failed to obtain Petitioner's clothing to show the angle and distance of the gunshots, 4) counsel failed to obtain EMS records to demonstrate the timing of the events in relation to when the other individuals present left her house, 5) counsel failed to obtain Petitioner's cell phone records to show when she called 9-1-1, 6) counsel failed to interview the people present at the house prior to the incident to establish that the victim was the initial aggressor, 7) counsel failed to obtain the cell phone records of the victim to determine when he attempted to call for a cab, 8) counsel failed to interview the victim's doctor regarding his bone cancer and ability to fight, 9) counsel failed to interview the police officers to determine the number of bullet casings found at the scene, and 10) counsel failed to investigate the victim's bloody jacket.

    The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that

counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690.

To satisfy the prejudice element, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review, a federal court must apply a doubly deferential standard of review: "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

After reciting the controlling constitutional standard, the Michigan Court of

Appeals rejected Petitioner's claim after considering and discussing each of her allegations:

> Defendant first contends that counsel failed to adequately investigate her case because counsel did not obtain defendant's medical records. These records, defendant contends, would have revealed her history of anxiety to explain why her trial testimony was different from her early statements to the police. The records also would have supported that Merrill had previously broken defendant's nose, thereby supporting her claim of fear. Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v. Trakhtenberg*, 493 Mich. 38, 52 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *People v. Russell*, 297 Mich. App. 707, 716 (2012).
>
> The subject medical records were unnecessary to mount defendant's defense. Merrill admitted on the stand that he had assaulted defendant in the past. Even if the medical records showed that defendant suffered from clinical anxiety, this would likely not remediate her credibility. The court found defendant's version of events illogical and contrary to common sense. Explaining away defendant's confusion over the type of object with which defendant [sic - the victim] allegedly hit her would not remove the incredulity.
>
> Defendant contends that counsel should have secured her medical records from the night in question, as these records were necessary to establish the seriousness of her injuries and the time she was shot. It was not disputed that Merrill shot defendant, however. While the seriousness of the injuries caused by one acting in self-defense can be relevant to show the actor's intent, that is not the case here. Gunshot wounds are always serious injuries, and the severity of defendant's injuries sheds no light on whether Merrill acted maliciously rather than in self-defense. Although the timing of the gunshots was at issue, defendant's medical

records could not have resolved the issue. The gap in the parties' testimonies suggested a difference of only a few minutes, too close in proximity for a medical doctor to resolve the dispute. Defendant further contends that the records would have shown that the staff gave her anxiety medication in the emergency room, potentially affecting her memory of events when she spoke to the police. As noted above, this explanation for defendant's inconsistency would not have saved her defense.

Defendant challenges her attorneys' decision not to present her nightgown into evidence. Defendant contends that the nightgown could have been used to show the distance from which she was shot and the angles. Defendant further asserts that counsel should have inspected her home for any bullet holes in the walls caused by the bullet traveling out of her body and questioned the officers about the number of shell casings they found in the home and the number of bullets the subject gun could hold. The decision not to present certain evidence only amounts to ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v. Dunigan*, 299 Mich. App. 579, 589-590 (2013). According to both parties' testimony, Merrill first shot defendant while she was on top of him, although defendant claims she was attempting to move at the time. The trajectory for the first shot would be very similar regardless of whose version of events was accurate. In relation to the second shot, counsel had no reason to investigate further. Defendant claimed that she was on the stairwell, heading to open the door for the police, when Merrill fired the second shot. The responding officer made no mention of hearing a gunshot. Accordingly, further investigation would not have supported defendant's claim. And the parties agreed that Merrill fired only two shots. Counsel had no grounds to investigate further in that regard.

Defendant asserts that counsel should have questioned the ambulance driver and hospital staff to determine when her relatives left her home on the night in question. Defendant further contends that counsel should have questioned the other individuals in the home at the time of assault, i.e., her sons. The evidence clearly established that defendant's relatives were gone by the time the ambulance arrived. The responding officer testified that defendant and Merrill were alone in the

house when emergency services came on the scene. And Merrill and one of defendant's sons testified that defendant's relatives had left the home before the physical altercation began. These witnesses could not have resolved "who the aggressor was and how drunk each of them was," contrary to defendant's position.

Defendant suggests that counsel should have sought discovery of her cellular telephone records to determine the timing of her 911 call and obtained a copy of the 911 recording. There is no dispute about the timing of defendant's 911 call. Defendant claims she tried to call 911 before the assault but that Merrill prevented her from hitting "send." Defendant and Merrill therefore agreed at trial that defendant did not call 911 until after the fight. And the content of the call would not assist defendant's defense in any appreciable way. Defendant had just been shot and therefore would have sounded in distress whether or not she had initiated the attack.

Defendant challenges counsel's failure to discover Merrill's cell phone number and the name of the taxi company he allegedly called. Merrill testified that defendant "knocked" the phone from his hand before he could summon a taxi. Accordingly, this evidence would not have been of assistance. Defendant further suggests that counsel should have questioned Merrill's doctor to gauge the accuracy of information about his frailty. However, the court was able to visibly assess Merrill's physical condition at trial and found him to be frail and much smaller than defendant.

Finally, defendant contends that counsel should have requested the inspection of Merrill's jacket to determine the amount and cause of any blood on that garment. Yet such inspection would not have uncovered useful evidence, however. The parties agree that blood was in the room from defendant beating Merrill with an iron and Merrill shooting defendant.

*Williams*, 2015 WL 5920244, at *5-7.

This decision did not involve an unreasonable application of the

*Strickland* standard. As the Michigan Court of Appeals found, none of the proposed actions Petitioner claims her counsel should have performed would have provided any substantial benefit to her defense. It was reasonable to find that records of Petitioner's prior injury and mental illness would not have supported her defense. The victim admitted at trial that he previously attacked Petitioner, and even if Petitioner's anxiety disorder explained the differences between her statement at the hospital and her testimony, those differences were not a significant factor leading the trial court to accept the victim's version of events.

Similarly, the severity of Petitioner's gunshot wounds were not relevant to her self-defense claim. There was no dispute that the victim shot Petitioner twice, and the medical records would not have indicated the timing of the shots in relation to the beating of the victim. The same thing holds true with respect to the condition of Petitioner's clothing, the condition of the victim's clothing, the timing of the phone calls, the timing of when Petitioner's relatives left the house, and the bullet casings. None of these items would have substantially assisted the court in determining which version of events was correct. Finally, even if medical records regarding the victim's bone cancer might have indicated he had years to live, the trial court observed first-hand his frailty and the disparity in size and strength between Petitioner and the victim.

Broadly stated, the failure to call witnesses or present other defense evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). For the reasons stated by the Michigan Court of Appeals, none of the omitted items listed by Petitioner deprived her of a substantial defense. Despite her protestations, it was reasonable for the state court to find that none of the items would have substantially aided in the presentation of her defense. Because the claim was reasonably rejected by the state courts, Petitioner's second claim does not provide a basis for granting habeas relief.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issues. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because her claims are devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Paul D. Borman  
Honorable Paul D. Borman  
United States District Judge

Dated: October 12, 2018

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 12, 2018.

s/Karri Sandusky on behalf of
Deborah Tofil, Case Manager
